IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL BURKES,<br>               Plaintiff<br><br>   vs.<br><br>MARK TRANQUILLI; THE DISTRICT<br>ATTORNEY'S OFFICE FOR THE<br>COMMONWEALTH OF<br>PENNSYLVANIA,<br>               Defendants | Civil Action No. 08-474<br><br>Judge Nora Barry Fischer |

<u>OPINION</u>

FISCHER, Judge

Michael Burkes, while a prisoner, filed this civil rights suit against two defendants: (1) Mark Tranquilli, an Assistant District Attorney in Allegheny County and (2) the Office of the District Attorney. Plaintiff essentially sues them for their allegedly wrongful prosecution of him for perjury. Because Defendant Tranquilli is entitled to absolute prosecutorial immunity for his decision to initiate criminal proceedings against Plaintiff, the complaint fails to state a claim against him. Because the District Attorney's Office lacks the capacity to be sued, the complaint fails to state a claim against it.

*Relevant Procedural History*

Plaintiff, while a prisoner at the Northeast Ohio Correctional Center, sought leave to prosecute this civil rights action in forma pauperis ("IFP"). Dkt. [1]. Having been granted IFP, Dkt. [2], Plaintiff's complaint, Dkt. [3], and an amended complaint, Dkt. [6], were docketed. The original complaint was dated April 1, 2008; the amended complaint was dated April 16,

2008. Although it appears that the complaint and amended complaint were received in separate envelopes, they were docketed as received on the same day as the IFP application was filed. Reading the two complaints, they are essentially the same, however, there are minor differences and, for the sake of clarity, the operative complaint will be the amended complaint. The rule is that an amended complaint supercedes the original complaint. New Rock Asset Partners, L.P., v. Preferred Entity, 101 F.3d 1492, 1504 (3d Cir. 1996)(the amended complaint "supersedes the original and renders it of no legal effect ...").

*Applicable Legal Principles*

In the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of oftentimes frivolous and harassing law suits brought by persons in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA significantly amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. The amended version of the statute now provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a plaintiff granted IFP status], the court shall dismiss the case at any time if the court determines that- (A) the allegation of poverty is untrue; or (B) the action or appeal- (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2). Here, Plaintiff was granted IFP status. Dkt. [2]. The court is required to dismiss sua sponte, at any time, a complaint submitted by a plaintiff-prisoner, who has been granted IFP status, when the complaint fails to state a claim. 28 U.S.C. § 1915(e)(2). Section 1915(e) includes the mandatory language of "the court shall dismiss." See,

2

e.g., Keener v. Pennsylvania Board of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)("It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

The PLRA in relevant part also added Section 1915A, entitled "Screening," to Title 28 U.S.C. to provide that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Here, Plaintiff was a "prisoner"[1] within the meaning of Section 1915A at the time of his initiating this civil action. The rule is that if at the time of the initiation of the civil action, the plaintiff is a prisoner, then the screening provisions of the PLRA apply even if subsequently, the prisoner is released. See, e.g., Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001)("the need for the district court to screen a complaint in a civil action filed by a prisoner, as required by 28 U.S.C. § 1915A, looks to the plaintiff's status when the case is filed.")(citing Johnson v. Hill, 965 F.Supp. 1487, 1488 n.2 (E.D. Va. 1997)); In re Smith, 114

---

[1] Section 1915A(c) defines the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."). Defendant Traqulli is an employee of a governmental entity. See, e.g., Brown v. Plansky, 24 Fed.Appx. 26 (2d Cir. 2001)(upholding district court's application of the Section 1915A screening provisions to a complaint against assistant district attorneys and police officers). The District Attorney's office is self evidently a governmental entity. Moreover, the filing of a complaint in a civil rights action is a "civil action" within the contemplation of Section 1915A. See Lewis v. Estes, 242 F.3d 375 (Table), 2000 WL 1673382 (8th Cir. Nov. 8, 2000) (applying Section 1915A to a civil rights complaint brought under 42 U.S.C. §1983). Thus, Section 1915A Screening is applicable herein. Moreover, under Section 1915A, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim but is required to do so. Nieves v. Dragovich, No. CIV.A.96-6525, 1997 WL 698490, at *8 (E.D. Pa. Nov. 3, 1997)("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted."), aff'd, 175 F.3d 1011 (3d Cir. 1999)(Table). The court's obligation is not excused even if the defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).

In performing a court's mandated function of sua sponte reviewing complaints under 28 U.S.C. §§ 1915(e) and 1915A to determine whether they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Powell v. Hoover, 956 F.Supp. 564, 568 (M.D.Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under

4

28 U.S.C. § 1915(e)(2)(B)(ii)). The complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact must be taken as true. See Estelle v. Gamble, 429 U.S. 97 (1976).

Furthermore, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

Dismissal is proper under Rule 12(b)(6), and hence, under 28 U.S.C. §§ 1915(e) and 1915A, where the court determines that the facts as alleged by the plaintiff taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law. See, e.g., Gould Electronics, Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000) ("In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law.").

*The Amended Complaint*

Reading Plaintiff's amended complaint liberally, the following appears. Plaintiff alleges that he was wrongfully accused of murder and that Defendant Tranquilli gave the murder case to another of his associates to prosecute. Plaintiff was acquitted of the murder. Plaintiff asserts that the Defendants took the acquittal as a "personal attack against their credibility." Dkt. [6] at 1, ¶1. Then "Mark Transquilli, acting under the authority of Defendant # 1, the District Attorney's Office for the Commonwealth . . . brought the charge of perjury up against" Plaintiff. Id., at ¶ 2. Before Plaintiff had a chance to be released from the Allegheny County Jail after the verdict of acquittal for the murder charge, Defendant Tranquilli allegedly contacted Plaintiff's probation

5

officer and ordered him not to rescind or "lift" the probation detainer because Defendant Tranquilli intended to bring new charges of perjury against Plaintiff. Plaintiff was acquitted of the murder charge on May 31, 2006. Defendant Tranquilli did not charge Plaintiff with the perjury charge until June 8, 2006. As evidence of the personal animosity Defendant Tranquilli allegedly held against Plaintiff, based upon Plaintiff's acquittal of the murder charges, Plaintiff points to the fact that although Tranquilli was a homicide prosecutor, Tranquilli personally went to the magistrates court to argue the charge of perjury. Id., at 2, ¶ 4.

The perjury charges arose from the following situation. Plaintiff had pleaded guilty to conspiracy in January 2003. Another man, who was apparently also involved in the criminal episode out of which Plaintiff 's conspiracy charge had arisen and to which Plaintiff had previously pleaded guilty, was also charged in connection with the criminal episode. Subsequently, Plaintiff testified at that man's trial. Plaintiff testified at that man's trial that Plaintiff had acted alone and that the man at trial had nothing to do with the criminal episode. Plaintiff argues that the man's trial had occurred in late 2003 or early 2004 and Defendant Tranquilli did not bring the perjury charge until some 2 years later. Plaintiff contends that this delay in bringing the perjury charge shows the bad faith of the Defendants because they waited to bring the perjury charge until after May 31, 2006, the date whereon Plaintiff was acquitted of the murder charge. Specifically, Plaintiff argues, "[s]o now the inference should be drawn that had the Defendants acted innocently then the charge would have been brought right up. Instead, the Defendant's [sic] waited until years later and not only that but they waited several days after the Petitioner [sic] was to be released from custody meaning, the Petitioner was forced to stay in jail for days without having any charges against him." Dkt. [6] at 2, ¶ 5.

Plaintiff was thereafter maintained in jail for roughly 5 ½ months until other charges were brought against him and then the charge of perjury was nolle prossed. Plaintiff asserts that "[u]pon this revelation, the Petitioner's [sic] suspicions of a malicious prosecution had been confirmed. The said Defendants had recklessly and negligently brought forth the charge of perjury. Even after it was established that they could not sustain their burden of proof." Id., at 2, ¶ 9. Plaintiff concludes the factual allegations of his complaint by declaring that

> Had the Defendants properly researched this issue, they would have known that they would not be able to successfully prosecute such a charge [of perjury]. They had also plenty of time to research before bringing the charge up against the Petitioner. Directly indicating that their whole intention from the start was to deprive the Petitioner's freedom from him one way or another.

Dkt. [6] at 3, ¶10.

By way of relief, Plaintiff seeks money damages and a public apology. Dkt. [6] at 3.

*Discussion*

It is clear that Plaintiff's claims against Assistant District Attorney Tranquilli are that he filed the perjury charge against Plaintiff maliciously and solely for the purpose of maintaining Plaintiff in custody.

Prosecutors enjoy absolute immunity from civil rights suits seeking money damages for actions taken by the prosecutor that are "intimately associated with the judicial process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). However, prosecutors enjoy only qualified immunity[2]

---

[2] The Supreme Court has explained qualified immunity as follows: "[u]nder this form of immunity, government officials are not subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In contrast, absolute immunity applies even when the conduct of an individual clothed with such violates clearly established statutory or constitutional rights of which a reasonable person would have known so long as the acts taken were

for actions that are not intimately associated with the judicial process but are actions that are investigative or administrative. See Kulwicki v. Dawson 969 F.2d 1454 (3d Cir. 1992). Thus, in determining whether a prosecutor enjoys absolute or only qualified immunity, the Court performs a "functional analysis" of the prosecutor's actions. See id. at 1463 ("In determining whether absolute immunity is available for particular actions, the courts engage in a 'functional' analysis of each alleged activity."). The Third Circuit has held that "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." Id. at 1463-64 (citations omitted). Here, the allegations are essentially that Defendant Tranquilli engaged in a malicious prosecution of Plaintiff, knowing that there was no prima facie case established and did so in bad faith. Such a decision by Defendant Tranquilli to prosecute Plaintiff for perjury, even if Tranquilli knew that no perjury was committed by Plaintiff, is at the core of Tranquilli's prosecutorial function and, thus, he is absolutely immune. Hence, the claim for money damages is properly dismissed.

To the extent that Plaintiff's requested relief regarding an apology can be construed as a request for injunctive relief against the Defendants, such a claim for injunctive relief fails to state a claim as a matter of law. See, e.g., Woodruff v. Ohman, 29 Fed.Appx. 337, 346 (6th Cir. 2002)("Here, the district court exceeded its equitable power when it ordered Ohman to apologize. As the Ninth Circuit noted when faced with a similar situation "[w]e are not commissioned to run around getting apologies." McKee v. Turner, 491 F.2d 1106, 1107 (9th Cir. 1974). . . .

---

within the scope of the immunity. See Imbler at 419 nn. 12, 13 & 14 (absolute immunity applies regardless of the actor's knowledge or intent, whereas qualified immunity depends upon reasonable grounds of the actor's belief ).

Neither the district court nor Woodruff cites to any authority, and we have found none, that would permit a court to order a defendant to speak in a manner that may well contravene the beliefs the defendant holds. We conclude that the district court abused its discretion in ordering Ohman to issue an apology to Woodruff.").

Dismissal of the Office of the District Attorney, also named as a Defendant, is proper on the grounds that the Amended Complaint fails to state a claim because the Office of the District Attorney lacks the capacity to be sued. Jacobs v. Port Neches Police Department, 915 F.Supp. 842, 844 (E.D.Tex.1996) (holding that county district attorney's office is not legal entity capable of being sued). Even if the District Attorney's Office had independent legal capacity to be sued, any claims against the District Attorney's office itself would be barred because it is clear from the complaint that Plaintiff seeks to hold the District Attorney's Office liable merely based upon the actions of one of its employees, i.e., Tranquilli, and this is nothing other than respondeat superior[3] liability, which is not permissible under the Civil Rights statute. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1981) (noting there is no respondeat superior liability under Section 1983). Accordingly, the complaint is properly dismissed against the Office of the District Attorney.

An appropriate Order follows.

                                                           s/Nora Barry Fischer
                                                           United States District Judge

Dated: July 2, 2008

---

[3] "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person [or entity] who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979).

cc: Michael Burkes
09468068
Northwest Ohio Correctional Center
2240 Hubbard Road
Youngstown, OH 44505